**BROSS UTILITIES SERVICE CORPORATION**

v.

**Abdulla Fouad A. ABOUBSHAIT, Abdulla Fouad A. Aboubshait Establishment, Fouad Abdulla Fouad, Fouad Abdulla Fouad Corporation, Electrical Mechanical Engineering Contractors, and Shamil Sami Ayntrazi.**

Civ. No. H 78–582.

United States District Court,
D. Connecticut.

May 22, 1980.

Mark C. Yellin, Elliot G. Macht, West Hartford, Conn., for plaintiff.

No appearance for defendants.

## MEMORANDUM AND ORDER

JOSÉ A. CABRANES, District Judge:

### Introduction

This action arises out of a joint venture for the construction of high voltage electrical lines in Saudi Arabia. Plaintiff Bross Utilities Service Corporation ("Bross"), a Connecticut corporation headquartered in this state, alleges various breaches of contract and of fiduciary duties, as well as tortious conduct, by the defendants, two Saudi corporations, a Lebanese corporation, two individual citizens of Saudi Arabia and one citizen of Lebanon. According to Bross, the defendants' wrongful acts deprived it of over $20,000,000, which represented Bross' share of the past and anticipated future profits of the joint venture.

Bross claims that the defendants are subject to the jurisdiction of this court through the application of the Connecticut "long-arm" statutes governing *in personam* jurisdiction over foreign corporations, Conn. Gen.Stat. § 33–411, and nonresident individuals, Conn.Gen.Stat. § 52–59b. Bross served process on the Secretary of State of Connecticut in the manner provided by Conn.Gen.Stat. §§ 33–411(d) and 52–59b(c) in November 1978.[1] None of the defend-

---

1. Bross also effected personal service on Romeo R. Cote, an alleged business agent of the Saudi defendants, within the state of Connecticut. Transcript of Hearing, March 10–11, 1980 (hereafter "Tr."), pp. 4, 11. In addition, the plaintiff has consistently mailed all pleadings and other court documents to the defendants. *See* Tr. 13–14. Bross was authorized, by order of then District Judge Jon O. Newman dated January 31, 1979, to make service of process by publication of notice of the pendency of this action in newspapers in Beirut, Lebanon and Saudi Arabia; such publication was not effected, in part because Bross considered it too costly. *See* Tr. 11–13.

ants answered or appeared, and default was entered, pursuant to Rule 55(a), Fed.R. Civ.P., on December 28, 1979. On February 15, 1980, the court granted the plaintiff's motion for default judgment, under Rule 55(b), Fed.R.Civ.P., and ordered that a hearing be held to determine the damages which Bross might recover.[2] At that hearing, which was held on March 10–11, 1980, the court raised questions concerning its jurisdiction over the defendants and reserved the right not to enter any judgment in favor of the plaintiff if it found that such jurisdiction was lacking.[3] The plaintiff presented the testimony of its senior vice president, Peter G. Olson,[4] as well as documentary evidence, concerning the questions of jurisdiction and damages.

After examination and analysis of the plaintiff's complaint, the evidence presented at the hearing, and Bross' post-hearing submissions, the court concludes that the applicable Connecticut statutes do not authorize *in personam* jurisdiction over the defendants. Accordingly, the plaintiff's motion for default judgment is, upon reconsideration, denied, the action is dismissed and judgment shall enter for the defendants.

**2.** No judgment has yet been entered.

**3.** *See* Tr. 3, 58. Bross filed a post-hearing "Summary of Damages Proven and Memorandum Concerning Personal Jurisdiction Over the Defendants" (hereafter "Plaintiff's Memorandum") on April 7, 1980. The court's concern that no judgment be entered against any defendant over whom it has not acquired *in personam* jurisdiction is based on the fact that, absent such jurisdiction, any judgment it rendered would be void and subject to attack under Rule 60(b)(4), Fed.R.Civ.P., or otherwise. *See, e. g., Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877); *Gray v. Permanent Mission of People's Republic of Congo,* 443 F.Supp. 816, 821–22 (S.D.N.Y.), *aff'd without opinion,* 580 F.2d 1044 (2d Cir. 1978); *Bartels v. International Commodities Corp.,* 435 F.Supp. 865, 867 (D.Conn.1977) (Newman, J.); 6 *Moore's Federal Practice* ¶ 55.09 at 55–201–02 (2d ed. 1976). The entry of default judgment is a matter committed to the discretion of the court, and the susceptibility of such a judgment to subsequent attack is a factor to be considered in determining whether judgment should be entered. *See Brown v. Weschler,* 135 F.Supp. 622 (D.D.C. 1955); *Henry v. Metropolitan Life Insurance*

## I. FACTUAL BACKGROUND

### A. Bross

Bross is incorporated in the State of Connecticut, with its principal place of business in Bloomfield, Connecticut.[5] It was founded in 1924,[6] and its shares have been publicly held and traded on the over-the-counter market since 1969.[7] Its primary business is the construction of electrical high voltage transmission lines, associated substations and lines and facilities for the distribution of electricity to populated areas.[8] Bross has approximately 100 employees,[9] and conducts its business wherever in the country or world it obtains contracts to perform work; very little of its business is conducted in Connecticut and the northeastern United States.[10]

### B. The Defendants

The three corporate defendants are Abdulla Fouad A. Aboubshait Establishment ("Establishment"), Fouad Abdulla Fouad Corporation ("FAFC") and Electrical Mechanical Engineering Contractors ("Emeco"); Establishment and FAFC are organized under the laws of Saudi Arabia, while Emeco is a Lebanese corporation.[11] The individual defendants are Abdulla Fouad A. Aboubshait and Fouad Abdulla Fouad, two

*Co.,* 3 F.R.D. 142 (W.D.Va.1942); 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2685 at 267 (1973).

**4.** The court finds Mr. Olson, who served as president of the wholly-owned subsidiary through which Bross participated in the joint venture which is at issue here (Tr. 33), to be a credible witness.

**5.** Complaint ¶ 1; Tr. 84–85.

**6.** Tr. 33, 85.

**7.** Tr. 55.

**8.** Tr. 33–34.

**9.** Tr. 85. The number of Bross employees varies according to the level of the company's business activity. Bross has had as many as 1400 employees. *Id.*

**10.** Tr. 85.

**11.** Complaint ¶¶ 3, 5.

Saudi citizens, and Shamil Sami Ayntrazi, a citizen of Lebanon;[12] the individual defendants control, respectively, Establishment, FAFC and Emeco.[13]

### C. The Joint Venture

In December 1974, Bross officers met with defendant Fouad Abdulla Fouad and discussed the possibility that the plaintiff might enter into a joint venture to construct electrical transmission and distribution systems in Saudi Arabia.[14] In April 1975, a joint venture, known as "Fouad Bross Emeco-Electrical Engineers," was formed by the plaintiff (through a wholly-owned subsidiary which was registered in the Grand Cayman Islands), Establishment and Emeco.[15] The joint venture apparently was designed to take advantage of Bross' technical expertise and ability to procure skilled workers and specialized equipment from the United States, as well as its co-venturers' capital and their capacity to oversee the enterprise locally.[16] Bross owned 31.5% of the joint venture and was entitled to a proportionate share of its profits.[17]

The joint venture obtained contracts to construct electrical transmission lines and substations in Saudi Arabia for the Arabian American Oil Company ("Aramco"), and ap-parently performed those contracts.[18] In addition, the joint venture was awarded several contracts for electrical distribution work in Saudi Arabia, for which it was to be paid on a "cost plus" basis.[19] However, the plaintiff never received any profits earned by the joint venture on these contracts.[20] Bross alleges that it was victimized by the defendants' wrongful appropriation of Bross' skilled American workers, the specialized equipment which Bross imported from the United States for the joint venture's use and business opportunities which rightfully belonged to the joint venture.[21] The plaintiff alleges that this conduct and related acts (such as the refusal to permit Bross' accountants to audit the joint venture's books, the revocation of the employment contracts of Bross' American workers, the failure to make payment of working capital to the joint venture and the misrepresentation of material facts to Bross) constituted breaches of contracts, breaches of fiduciary duties, tortious interference with the plaintiff's contracts and business relations, and fraud.[22]

### D. The Defendants' Contacts with Connecticut

Bross' complaint is silent on questions relevant to the assertion of *in personam*

---

**12.** Complaint ¶¶ 2, 4.

**13.** Complaint ¶¶ 14, 16.

**14.** Tr. 34; Complaint ¶ 8. It is not clear where this meeting or other events relevant to the formation of the joint venture took place, although it is established that it was somewhere other than Connecticut. *See* Tr. 87.

**15.** Tr. 34; Complaint ¶¶ 11–12. There is no averment in the pleadings or evidence in the record as to the domicile of the joint venture, the jurisdiction in which it was created or the laws under which it was organized. Inasmuch as it was clearly in the plaintiff's interest to call to the court's attention any such facts connecting the joint venture, as an entity, to Connecticut, the court infers from the lack of factual allegations in the complaint and evidence at the March 10–11, 1980 hearing relating to this question that the joint venture had no relevant legal relationship to this state.

**16.** Tr. 34–37.

**17.** Tr. 37.

**18.** Tr. 38; Complaint ¶ 13.

**19.** Tr. 39–42.

**20.** Tr. 38, 41. The testimony of Mr. Olson indicates that Bross' share of the profits on the Aramco transmission contracts was $715,803, and that Bross was entitled to receive, but was not paid, $5,694,384.32 in profits on the "cost plus" contracts for distribution work over the period November 1, 1976–March 31, 1980. *See* Tr. 38–42. In addition, Mr. Olson testified that it was likely that, had the defendants not breached their contractual and other obligations, the joint venture would have done sufficient transmission and distribution work in Saudi Arabia over the period April 1, 1980–March 31, 1985 to generate nearly $55,000,000 in profits, of which Bross would have received $17,306,143.30. Tr. 42–45.

**21.** Complaint ¶ 19.

**22.** *See generally* Tr. 46, 54, 56–57; Complaint ¶¶ 18–47.

jurisdiction over the defendants under Connecticut's "long-arm" statutes.[23] Bross did not allege that the defendants are, or ever were, present in this state, or that they committed acts, either personally or through agents, which would give rise to jurisdiction under Conn.Gen.Stat. §§ 33–411 or 52–59b.

At the hearing held on March 10–11, 1980, the plaintiff was invited to present evidence on the question of *in personam* jurisdiction. Mr. Olson testified that there were no meetings in Connecticut between representatives of the plaintiff and either the individual defendants or officers or directors of the corporate defendants.[24] The plaintiff introduced no evidence that the defendants came to Connecticut to transact any business, except the presence in this state of one Romeo R. Cote of Southington, Connecticut, who met twice with Mr. Olson and described himself as an agent of the Saudi defendants.[25] The first of these meetings occurred in 1975, the second in 1976.[26] On both occasions, Mr. Cote initiated the meetings, which were held at Bross' Bloomfield offices.[27]

At the first meeting, Mr. Cote introduced himself as an agent "for the Fouad Company" and explained that his job was to try to get business in the United States for the Saudi defendants. At the second meeting, Mr. Cote, who in Mr. Olson's words, "somehow or other . . . found out that the relationships were strained between the parties" to the joint venture, volunteered to help resolve those differences and assist the plaintiff in getting "substantial amounts of work" in Saudi Arabia.[28] There is no evidence (and the plaintiff does not allege) that Mr. Cote had anything to do with the establishment of the joint venture or the performance of the contracts at issue here, and it appears that the two meetings were isolated incidents with little connection to the problems Bross experienced in its relations with the defendants in Saudi Arabia.[29]

## II. JURISDICTION

■ A federal court adjudicating a case founded upon diversity of citizenship must determine questions of *in personam* jurisdiction by reference to the law of the forum state. *Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963) (en banc); *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1168 (D.Conn.1973) (Newman, J.). The state law relevant here is Conn.Gen.Stat. § 33–411 (with respect to the corporate defendants) and Conn.Gen. Stat. § 52–59b (as to the individual defendants). The court therefore considers the allegations of the complaint and the facts proved at the hearing held on March 10–11, 1980 in light of those statutory provisions.

### A. The Corporate Defendants

#### (1) Transacting Business Under Conn. Gen.Stat. § 33–411(b)

None of the corporate defendants is alleged to have been authorized to transact business in Connecticut pursuant to Conn. Gen.Stat. §§ 33–395 or 33–396. Bross argues in its brief that they nonetheless transacted business here, in violation of those provisions, and are therefore "subject

---

**23.** The only jurisdictional allegations in the complaint relate to federal subject matter jurisdiction, which is founded upon diversity of citizenship, under 28 U.S.C. § 1332(a)(2). *See* Complaint ¶¶ 1–7.

**24.** Tr. 87. The defendants communicated, apparently by international telex and mail, with Bross' Connecticut office. Tr. 86–87.

**25.** Tr. 68–70, 87.

**26.** Tr. 68–70.

**27.** *Id.*

**28.** *Id.*

**29.** In addition to Mr. Olson's testimony, a business card handed by Mr. Cote to Mr. Olson supports the plaintiff's position that Mr. Cote was an agent of the Saudi defendants. The card, marked Plaintiff's Exhibit 5 at the March 10–11, 1980 hearing, reads: "Fouad-Cote Corp./Romeo R. Cote, President," and contains a Southington address and telephone number. However, another exhibit introduced by the plaintiff casts doubt on Bross' claim that the scope of Mr. Cote's agency extended to relations between the defendants and Bross. Plaintiff's Exhibit 8, a January 5, 1976 letter from defendant Fouad Abdulla Fouad to Mr. Cote, suggests that the defendants did not want Mr. Cote to become involved with matters relating to the joint venture.

to suit in this state upon any cause of action arising out of such business." Conn.Gen. Stat. § 33–411(b). In support of this argument, the plaintiff relies upon: (1) the activities in this state of Romeo R. Cote, as agent for defendants Establishment and FAFC; (2) the activities here of Bross itself, on the theory that Bross' acts are to be imputed to their co-venturers, defendants Establishment and Emeco, under the law of agency; and (3) international communications between the corporate defendants, located outside of Connecticut, and the plaintiff, located within this jurisdiction.

■ None of these circumstances supports jurisdiction under Conn.Gen.Stat. § 33–411(b). In the first place, the plaintiff has not demonstrated that the causes of action which it asserts arise out of any business transacted here by Mr. Cote. Indeed, Bross has not even alleged that Mr. Cote played any part in the formation or performance of the contracts with which this litigation is concerned, or had anything to do with the tortious acts with which his principals are charged. Although the court finds plausible Bross' contention that Mr. Cote transacted some business in Connecticut on behalf of the Saudi defendants, it has been afforded no basis to conclude that this lawsuit arises out of any business he conducted here.

■ Nor do the *plaintiff's* acts in Connecticut serve as a basis for jurisdiction over *defendants* who have not otherwise transacted business relating to this action in Connecticut. See *Glendinning Companies, Inc. v. Codesco, Inc.*, 3 Conn.L.Trib.No. 40, p. 16 (Super.Ct. Fairfield Cty. July 18, 1977). While Bross' theory that it was the agent of its co-venturers may have application in other contexts, the plaintiff may not transform or "bootstrap" its own activities

in this state into acts by nonresident defendants. See *Sayles Biltmore Bleacheries, Inc. v. Soft-Fab Textile Processors, Inc.*, 440 F.Supp. 1010, 1012 (S.D.N.Y.1977); *Concrete Detailing Services, Inc. v. Thomsson Steel Co.*, 411 F.Supp. 1021, 1023 (S.D.N.Y. 1976); *Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973).

■ Conn.Gen.Stat. § 33–411(b) refers only to the transaction of business by foreign corporations, not domestic corporations claiming to be, as a matter of law agents for the foreign corporations against which they assert claims in this forum. The plaintiff's creative "agency" theory would not only do violence to the language of the statute, but would raise substantial due process questions as well, for, as the Supreme Court has recently reiterated, "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), *quoting Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Even if Conn. Gen.Stat. § 33–411(b) extended the notion of "transacting business" to the constitutionally permissible limits—which it does not [30]—the plaintiff's theory would not withstand the due process analysis of *World-Wide Volkswagen* and *Hanson*.

■ Finally, Bross' argument that Conn. Gen.Stat. § 33–411(b) is applicable because the defendants "were actively receiving and sending cables, telegrams, and telexes, letters, correspondence, etc., into Connecticut, all pursuant to the business activities of the defendants and the [plaintiff]" [31] is without foundation. [32] The transmission of commu-

---

**30.** See *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1169 n.5 (D.Conn.1973); *Marvel Products, Inc. v. Fantastics, Inc.*, 296 F.Supp. 783, 785 (D.Conn.1969) (Blumenfeld, J.); *Chemical Specialties Sales Corp. v. Basic Inc.*, 296 F.Supp. 1106, 1109 (D.Conn.1968) (Zampano, J.); *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F.Supp. 550, 556 (D.Conn.1968) (Timbers, C. J.).

**31.** Plaintiff's Memorandum, p. 15.

**32.** The cases cited by Bross in support of the proposition that such contacts suffice to confer jurisdiction on this court under Conn.Gen.Stat. § 33–411(b) are inapposite. *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166 (D.Conn.1973) was not decided under section 33–411(b), while *Eutectic Corp. v. Curtis Noll Corp.*, 342 F.Supp. 761 (D.Conn.1972) (action arising out of sales activities of foreign corporation with thirteen salesmen in Connecticut, generating approximately $300,000 in sales an-

nications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transaction of business in the forum state. *See, e. g., Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 587–88 (2d Cir. 1965) (construing a nearly identical New York statute, N.Y.C.P. L.R. § 302(a)(1)); *Sayles Biltmore Bleacheries, Inc. v. Soft-Fab Textile Processors, Inc., supra*, 440 F.Supp. at 1013 (same); *Rainbow Industrial Products v. Haybuster Manufacturing, Inc.*, 419 F.Supp. 543 (E.D.N.Y. 1976) (same).[33] Because the court has before it no evidence that the corporate defendants have otherwise transacted business in the state, the international communications do not suffice to confer jurisdiction over them pursuant to Conn.Gen.Stat. § 33–411(b).

### (2) Jurisdiction Under Conn.Gen.Stat. § 33–411(c)

Bross argues that Conn.Gen.Stat. § 33–411(c) permits the court to assert *in personam* jurisdiction over the corporate defendants. To the extent relied upon by the plaintiff, that provision states:

> (c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this

state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or  .  .  .  (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn.Gen.Stat. § 33–411(c).

■ Bross' claim that the action arises out of a contract made in Connecticut must fail for lack of relevant allegations or proof. There is no evidence on the record and no allegation in the complaint as to where any of the relevant contracts were made;[34] indeed, the plaintiff has not provided the court with copies of any contracts. Nor has the plaintiff established that the contracts clearly and expressly contemplated and required performance by either party in Connecticut. *See Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F.Supp. 725, 732 & n.7 (D.Conn.1979) (Daly, J.); *Glendinning Companies, Inc. v. Codesco, Inc., supra*, 3 Conn. L.Trib. No. 40 at 16. From the testimony of the plaintiff's senior vice president, Mr. Olson, it appears that the joint venture agreement and all other relevant contracts were to be performed in Saudi Arabia; there is no evidence that the contracts in question were to be performed elsewhere. At most Bross has shown that it contemplated that it would undertake some preliminary measures in Connecticut, in preparation for its performance in Saudi Arabia. Conn.Gen.Stat. § 33–411(c)(1) is therefore inapplicable.

---

nually) and *Horn Construction, Inc. v. Stran-Steel Corp.*, 26 Conn.Supp. 201, 216 A.2d 833 (Ct. C.P. Hartford Cty. 1965) (action arising out of defendant's sale to Connecticut plaintiff of plans, specifications and building materials for construction of buildings in Connecticut) involved considerably more than mere communications from outside the jurisdiction into Connecticut. The plaintiff has not called to the court's attention any cases holding that interstate or international communications between foreign defendants and a Connecticut plaintiff by themselves establish jurisdiction over the defendants pursuant to Conn.Gen.Stat. § 33–411(b), and the court is not aware of any such authority.

**33.** N.Y.C.P.L.R. § 302(a)(1) provides for jurisdiction over "any nondomiciliary" who "transacts any business within the state," as to a cause of action arising from the transaction of such business. As applied to corporations, the scope of this provision is at least as broad as that of Conn.Gen.Stat. § 33–411(b), which provides that "[e]very business in this state in violation of section 33–395 or 33–396 shall be subject to suit in this state upon any cause of action arising out of such business."

**34.** If the contracts were made through face-to-face meetings, they were clearly made outside of Connecticut. *See* Tr. 87.

■ Nor does subsection (2) of that statute apply to the facts pleaded or adduced by Bross. The plaintiff has failed to allege or establish that the business which gave rise to this lawsuit was "solicited in this state." Indeed, there is no allegation or evidence as to where the business which is at issue here was solicited. Therefore, even if the activities of Mr. Cote in Connecticut constitute the repeated solicitation of business here, *see McFaddin v. National Executive Search, Inc., supra,* 354 F.Supp. at 1169, Conn.Gen.Stat. § 33–411(c)(2) does not provide for jurisdiction over the corporate defendants on the plaintiff's claim, which arises out of business other than that solicited by Mr. Cote.

■ Finally, Conn.Gen.Stat. § 33–411(c)(4), which is limited to tortious conduct committed within Connecticut,[35] is by its terms inapplicable. The tortious conduct of the corporate defendants, who defrauded the plaintiff and interfered with its contractual and other business relationships, took place, as far as the record before the court discloses, in Saudi Arabia. In Judge Blumenfeld's words, Conn.Gen.Stat. § 33–411(c)(4) is concerned only with "the *place where* the tortious conduct occurred. It requires tortious *conduct in this state."* *Southern New England Distributing Corp. v. Berkeley Finance Corp.,* 30 F.R.D. 43, 47 (D.Conn.1962) (emphasis in original). *Accord, Lee v. Regina Corp.,* 253 F.Supp. 825, 828 (D.Conn.1966) (Zampano, J.); *Melillo v. Monarch Wine Co.,* 29 Conn.Sup. 172, 276 A.2d 904 (Ct.C.P. New Haven Cty.1971).

On the basis of the relevant allegations and the facts of which the court has been made aware, the court concludes that *in personam* jurisdiction over the corporate defendants may not be exercised under Conn.Gen.Stat. § 33–411.

## B. *The Individual Defendants*

The plaintiff's contention that the individual defendants are subject to the jurisdiction of this court rests upon a different statutory provision. The "long-arm" statute which Bross invokes as to these defendants provides, in pertinent part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from such act: or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from such act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . . .

Conn.Gen.Stat. § 52–59b(a).

### (1) Jurisdiction Under Conn.Gen.Stat. §§ 52–59b(a)(1) and (2)

■ Nothing in the record indicates that the individual defendants transacted any business other than through the corporations which they controlled. Accordingly, the court's conclusion that the plaintiff's claims against the corporate defendants did not arise out of the transaction by them of any business in Connecticut compels a finding that the same claims against the individual defendants similarly do not confer *in personam* jurisdiction on this court under Conn.Gen.Stat. § 52–59b(a)(1). Likewise, the court's determination that the tortious conduct of the corporate defendants oc-

---

**35.** The statutory reach of Connecticut's "long arm" is more expansive with regard to nonresident individuals under Conn.Gen.Stat. § 52–59b(a)(3) than it is with regard to foreign corporations under Conn.Gen.Stat. § 33–411, at least in tort cases. As noted at p. 1374, *infra,* jurisdiction under the former provision may be premised on torts committed outside Connecticut which cause injury within the state in certain enumerated circumstances; Conn.Gen. Stat. § 33–411 contains no analogue governing corporate defendants.

curred outside of Connecticut leads inexorably to the conclusion that Conn.Gen.Stat. § 52–59b(a)(2) has no application here.

### (2) Jurisdiction Under Conn.Gen.Stat. § 52–59b(a)(3)

■ A more serious question is presented by Bross' invocation of Conn.Gen.Stat. § 52–59b(a)(3), for the defendants' tortious acts, including fraudulent inducement [36] and wrongful interference with Bross' business,[37] although committed in Saudi Arabia, arguably "cause[d] injury to person or property within the state" of Connecticut. The threshold question under Conn.Gen.Stat. § 52–59b(a)(3) is whether the injury to Bross occurred in Connecticut. Determining the place of injury caused by a commercial tort committed in the course of interstate or international business transactions is not simple task, but is required by the statute. See American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 432–33 (2d Cir. 1971). Although there are no reported cases on this question under the Connecticut statute, the court is able to draw upon a substantial body of relevant case law decided under the nearly identical New York statute, N.Y.C.P.L.R. § 302(a)(3),[38] upon which Conn.Gen.Stat. § 52–59b(a)(3) is based.[39]

Under the New York statute, it has repeatedly been held that the facts that a plaintiff who has lost profits or suffered other pecuniary injury is domiciled or incorporated in that state or that New York is the plaintiff's principal place of business do not necessarily make New York the situs of the plaintiff's injury. See, e. g., Lehigh Valley Industries, Inc. v. Birenbaum, 527 F.2d 87, 94 (2d Cir. 1975) (N.Y.C.P.L.R. § 302(a)(3) "is not satisfied by remote or consequential injuries . . . which occur in New York only because the plaintiff is domiciled or doing business here"); American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra, 439 F.2d at 433–34; Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300, 303 (2d Cir. 1968); Xedit Corp. v. Harvel Industries Corp., Fidelipac, 456 F.Supp. 725, 728 n.3 (S.D.N.Y.1978); G.S.C. Associates, Inc. v. Rogers, 430 F.Supp. 148, 150 (E.D.N.Y. 1977); Security National Bank v. Ubex Corp. Ltd., 404 F.Supp. 471, 474–75 (S.D.N.Y.1975); Chemical Bank v. World Hockey Association, 403 F.Supp. 1374, 1380 (S.D.N.Y.1975); Spectacular Promotions, Inc. v. Radio Station WING, 272 F.Supp. 734, 737 (E.D.N.Y.1967) (Weinstein, J.); Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 326–27, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980). Rather, in the context of commercial torts, the place of injury is generally "the place where the critical events associated with the dispute took place." American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra, 439 F.2d at 433, quoting Spectacular

---

**36.** See generally Duksa v. City of Middletown, 173 Conn. 124, 376 A.2d 1099 (1977); Cole v. Associated Construction Co., 141 Conn. 49, 103 A.2d 529 (1954).

**37.** See generally Bowman v. Grolsche Bierbrouwerij B.V., 474 F.Supp. 725, 733–34 (D.Conn. 1979); Goldman v. Feinberg, 130 Conn. 671, 674–76, 37 A.2d 355, 356 (1944).

**38.** The New York statute provides:
(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
\* \* \* \* \* \*
(3) commits a tortious act without the state causing injury to person or property within the

state, except as to a cause of action for defamation of character arising from the act, if he
(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.
N.Y.C.P.L.R. § 302(a)(3).

**39.** Indeed, all of Conn.Gen.Stat. § 52–59b(a), which was enacted in 1969, was based upon N.Y.C.P.L.R. § 302(a). Gandolfo v. Alford, 31 Conn.Supp. 417, 333 A.2d 65 (Super Ct. Litchfield Cty. 1975).

*Promotions, Inc. v. Radio Station WING, supra,* 272 F.Supp. at 737.

The "critical events" in this case—such as the defendants' appropriation of the plaintiff's workers and equipment, their failure to infuse the joint venture with promised working capital and their refusal to permit Bross' accountants to inspect the books of the joint venture—all appear to have taken place in Saudi Arabia. Insofar as the record before this court shows, the profits which the plaintiff is suing to recover would have been derived from business in Saudi Arabia, not Connecticut. The plaintiff alleges that it was deprived of such profits by the defendants' wrongdoings in Saudi Arabia, rather than Connecticut. Accordingly, Bross' injury occurred in Saudi Arabia, and Conn.Gen.Stat. § 52–59b(a)(3) does not apply to this case. *See, e. g., G.S.C. Associates, Inc. v. Rogers, supra,* 430 F.Supp. at 150 (injury suffered by New York plaintiff whose former Illinois sales representative wrongfully solicited plaintiff's Illinois customers in breach of a duty not to compete had its situs in Illinois, not New York); *Chemical Bank v. World Hockey Association, supra,* 403 F.Supp. at 1380 (in New York corporation's action for conversion, the plaintiff suffered injury not in New York, but in the states where the defendants performed acts to convert the property); *Fantis Foods, Inc. v. Standard Importing Co., supra* (New York corporation could not maintain conversion action there under C.P.L.R. § 302(a)(3) where the conversion occurred overseas); *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 205, 413 N.Y.S.2d 127, 131, 385 N.E.2d 1055, 1058 (1978) (Breitel, C. J.,) (New York plaintiff's action against former employee who allegedly appropriated its trade secrets could be brought in New York under C.P.L.R. § 302(a)(3), because New York was where the relevant product was manufactured, where the plaintiff's trade secrets were acquired by the defendant, and where the plaintiff lost customers); *cf. Harem-Christensen Corp. v. M. S. Frigo Harmony,* 477 F.Supp. 694, 696–97 (S.D.N.Y.1979).

In sum, none of the subsections of Conn. Gen.Stat. § 52–59b which Bross has invoked support the assertion by this court of *in personam* jurisdiction over the nonresident individual defendants. The court therefore has no occasion to consider whether such jurisdiction would be constitutionally permissible under the "minimum contacts" test of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), as interpreted by such subsequent cases as *Hanson v. Denckla* and *World-Wide Volkswagen Corp. v. Woodson, supra.* In any event, it certainly was not the intention of the General Assembly to extend the jurisdiction of the courts of Connecticut to defendants, such as the nonresidents sued here, who have not "purposely avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240.

### Conclusion

The court finds, on the basis of the allegations in the plaintiff's complaint and the evidence presented by the plaintiff at the hearing held on March 10–11, 1980, that the requirements of the Connecticut "long-arm" statutes have not been satisfied. Accordingly, upon reconsideration of the plaintiff's motion for default judgment, that motion is denied and the action is dismissed as to all the defendants. Judgment shall enter for the defendants in accordance with this memorandum and order.

It is so ordered.