**CONNECTICUT ARTCRAFT CORPORATION, d/b/a Lotus Health Care Products, Plaintiff,**

v.

**Edgwin R. SMITH, Peter A. Keay, Wellington Paul and Florida Bindery, Inc., Defendants.**

**Civ. A. No. N–83–435.**

United States District Court, D. Connecticut.

Nov. 16, 1983.

Jack Lackland, Westport, Conn., Jeffrey Schwab, Abelman, Frayne & Rezac, New York City, for plaintiff.

Charles Heinzer, Cummings & Lockwood, Stamford, Conn., for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

ZAMPANO, Senior District Judge.

Connecticut Artcraft Corporation d/b/a Lotus Health Care Products ("Lotus Health Care") instituted this diversity action for injunctive, monetary and other relief against two former employees, Edgwin Smith and Peter Keay, their new employer, Florida Bindery, Inc., and its principal officer, Wellington Paul. Lotus Health Care is

a Connecticut corporation headquartered in this state. Smith and Keay are former residents of Connecticut presently living in Florida. Paul is a resident of Florida and Florida Bindery is a Florida corporation. Jurisdiction over the defendants is grounded on Connecticut's "long-arm" statutes, Conn.Gen.Stat. § 33–411 (foreign corporations) and Conn.Gen.Stat. § 52–59b (nonresident individuals).

The plaintiff filed a motion for a preliminary injunction seeking, in essence, to enjoin the defendants from utilizing certain trade secret information obtained by Smith and Keay while in plaintiff's employ. The defendants cross-moved to dismiss the case on the ground that the Court lacks *in personam* jurisdiction over them. It was deemed feasible to consider the defendants' motion first. A three day hearing was held, limited to the presentation of jurisdictional facts. Solely for the purpose of their motion to dismiss, the defendants conceded that Lotus Health Care possessed trade secrets during the time of Smith's and Keay's employment there.

## I. FACTS

Lotus Health Care is in the business of designing and manufacturing health care products, specializing in chair cushions and mattresses which inhibit the formation of decubitus, commonly referred to as "bed sores", in patients confined to wheelchairs or beds. Among other things, Lotus Health Care expended time and money for designs and materials relating to two new products which can be generally described as a vacuum formed cushion for a wheelchair seat and a partially vacuum formed vinyl water flotation mattress. In order to expedite the hearing on the jurisdictional question, the parties stipulated that the development of these new products involved confidential and secret information not generally known in the trade.

Smith was hired by the plaintiff in June 1980; Keay started employment with the company in May 1981. Both men were skilled and talented technicians who were assigned to work on the various manufacturing techniques for the new seat cushion and sickbed mattress.

In June 1982, Smith, while on vacation, visited some relatives in Florida. There he met Paul, whose company, Florida Bindery, was primarily engaged in the book binding business. Paul's wife was bedridden and he became interested in Smith's knowledge of health care devices, particularly the use of a flotation mattress to deter decubitus. The conversation led to a discussion of establishing a health care business in Florida, with Paul providing the capital and Smith contributing his skills and knowledge to the venture. Both men found the idea attractive but no firm decisions were reached concerning the terms of employment or exact products to be manufactured.

Upon his return from Florida, Smith met with Keay and encouraged him to join the new business in Florida if Paul decided to provide the needed finances. During the next two months, there were a series of telephone conversations among Smith, Keay and Paul concerning various aspects of the venture. In late August 1982, Smith and Keay travelled to Florida to meet with Paul. Following a three hour discussion, an agreement was reached that Paul, Smith and Keay would open a health care business in Jacksonville, Florida. In September 1982, Smith and Keay terminated their employment with Lotus Health Care and immediately moved to Florida to work with Paul. Smith and Keay were initially paid for their services by Florida Bindery until a new corporation, 2100 Dennis Street, Inc., was formed to carry on the enterprise.

In June 1983, officials at Lotus Health Care received a report that Smith's company in Florida was intending to market a seat cushion and flotation mattress identical to those being tested for production by Lotus Health Care. Because it believed that Smith and Keay were about to manufacture health care products which incorporated trade secret information appropriated during their former employment, Lotus Health Care instituted this lawsuit. While the defendants vigorously deny that their

products in any way embody protected processes belonging to Lotus Health Care, the Court will assume, solely for purposes herein, that the defendants made wrongful use of trade secrets owned by the plaintiff.

## II. DISCUSSION

■ It is settled law that before a federal court in diversity can properly assert personal jurisdiction over a nonresident defendant, it must make two inquiries. First, it must determine whether the state's long-arm statute authorizes the exercise of jurisdiction. See, e.g., *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2 Cir.1963) (en banc); *Bross Utilities Service Corp. v. Aboubshait*, 489 F.Supp. 1366, 1370 (D.Conn.), aff'd mem., 646 F.2d 559 (2 Cir.1980); *Lombard Bros., Inc. v. General Asset Management Co.*, 190 Conn. 245, 250, 460 A.2d 481 (1983). Second, the court must decide whether the statutory authority comports with due process. See, e.g., *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny.

### A. *Individual Defendants Smith and Keay*

■ The first alleged basis of jurisdiction over Smith and Keay is section 52–59b(a)(2) which extends jurisdiction over an individual who commits "a tortious act within the state." The tortious act relied upon is that Smith and Keay, while employed by the plaintiff, acquired trade secrets belonging to the plaintiff which they "intended" to unlawfully utilize in a competing business in Florida.

However, it is uncontroverted that Smith and Keay became familiar with plaintiff's secret designs and materials solely as a consequence of their employment with the plaintiff. They did not wrongfully acquire knowledge of plaintiff's trade secrets nor did they purloin any of plaintiff's blueprints, files, memoranda, sketches, samples or equipment. Surely, the mental absorption during the course of their employment of information and impressions cannot be considered a tortious act. The tort in this case occurred, if at all, after Smith and Keay left Connecticut and went to Florida where they disclosed trade secrets to Paul and then commenced to employ the confidential information in the manufacture of mattresses and cushions for Florida Bindery. It seems evident, therefore, that the place of the wrong (locus delicti) was in Florida and not Connecticut. See Restatement (Second) of Torts, §§ 757, 758; *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2 Cir.1956). Under these circumstances, the Court finds that section 52–59b(a)(2) is inapplicable to the facts of this case.

Plaintiff next asserts that jurisdiction exists under Conn.Gen.Stat. § 52–59b(a)(3) which confers jurisdiction over an individual 1) who commits a tortious act outside of Connecticut; 2) which causes injury inside the state; 3) who expects or should expect that the act will have consequences in Connecticut; and 4) who derives substantial revenue from interstate or international commerce.

In the commercial tort situation, a jurisdictional determination under this provision is somewhat difficult conceptually because the statutory section was intended to cover physical not commercial damage from tortious acts. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 432 (2 Cir.1971). Research discloses no Connecticut state case authority on point. However, Judge Cabranes in *Bross* adopted the "critical events" test to determine the situs of the injury resulting from the tortious act. This test has been applied in a substantial body of relevant case law in New York under the nearly identical New York statute, N.Y.C.P.L.R. § 302(a)(3), upon which § 52–59b(a)(3) is based.[1] *Bross*, 489 F.Supp. at 1374–75, and cases cited therein.

■ In evaluating the "critical events" for the purposes of jurisdiction, it has been held that the plaintiff's residence or domi-

---

[1] All of Conn.Gen.Stat. § 52–59b(a) was based on N.Y.C.P.L.R. § 302(a). *Gandolfo v. Alford*, 31 Conn.Supp. 417, 333 A.2d 65 (Super.Ct. Litchfield Cty.1975).

cile within a state, in and of itself, is not a sufficient predicate for the exercise of jurisdiction in that state. The determinative factor for jurisdiction is evidence of direct economic injury to the plaintiff within the state. See, e.g., *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 94 (2 Cir. 1975) (jurisdictional requirements "not satisfied by remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here"); *Arbitron Co. v. E.W. Scripps, Inc.*, 559 F.Supp. 400, 404 (S.D.N.Y.1983) (loss of business within state a prerequisite to jurisdiction); *Data Communication, Inc. v. Dirmeyer*, 514 F.Supp. 26, 31 (E.D.N.Y.1981) (plaintiff's alleged loss of federal government as a customer insufficient for jurisdiction absent a showing that plaintiff will or has lost business with a federal agency in state); *Stark Carpet Corporation v. M-Geough Robinson, Inc.*, 481 F.Supp. 499, 509 (S.D.N.Y.1980) (burden on plaintiff to demonstrate direct injury in New York to establish threshold jurisdiction).

The case of *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978), upon which the plaintiff heavily relies, is not to the contrary. In *Sybron*, jurisdiction was sustained because the defendant who allegedly appropriated the plaintiff's trade secrets had actively solicited and obtained orders in New York which resulted in a loss of plaintiff's business. See *American White Cross Labs., Inc. v. H.M. Cote, Inc.*, 556 F.Supp. 753, 759 (S.D.N.Y.1983); *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 325 n. 3, 425 N.Y.S.2d 783, 786 n. 3, 402 N.E.2d 122, 125 n. 3 (1980). Here, however, the defendants have not sold their products in Connecticut and have not acquired any of the customers of Lotus Health Care. The probability of economic injury in Connecticut is at best remote and speculative, and therefore, section 52–59b(a)(3) does not apply in the instant case. See *American Eutectic Welding Alloys Sales Co.*, 439 F.2d at 432–33.

■ Although the Court has found that none of the subsections of § 52–59b supports jurisdiction, it merits mention that, in any event, it is doubtful that jurisdiction would be constitutionally permissible under the "minimum contacts" test of *International Shoe Co. v. Washington* and its progeny. Jurisdiction is to be determined at the time of the service of the complaint. *Lachman v. Bank of Louisiana in New Orleans*, 510 F.Supp. 753, 757 (N.D.Ohio 1981). At that time, Smith had no contacts whatever with the State of Connecticut, and Keay only had a few relatives and a small bank account ($13) in this State. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 250–51, 78 S.Ct. 1228, 1237–38, 2 L.Ed.2d 1283 (1958).

### B. *Individual Defendant Paul*

■ Plaintiff alleges that defendant Paul induced Smith and Keay to breach their fiduciary duties to the plaintiff and conspired with Smith and Keay to wrongfully use the trade secrets. Plaintiff argues that jurisdiction exists under section 52–59b(a)(2), in that the tortious acts complained of occurred in Connecticut. Acknowledging that Paul was never in Connecticut, plaintiff advances agency and conspiracy theories to impute Smith's and Keay's activities in Connecticut to Paul.

For reasons hereinbefore stated, the appropriation of plaintiff's trade secrets occurred in Florida and any inducement by Paul of Smith and Keay to breach their fiduciary duties took place in Florida. Therefore, section 52–59b(a)(2) has no application.

Plaintiff also asserts that jurisdiction should lie under section 52–59b(a)(3). Because it has been found that the plaintiff has suffered no direct loss of business in Connecticut, this subsection cannot support jurisdiction over Paul.

The plaintiff next claims that Paul must be considered to have transacted business in Connecticut, empowering the Court to exercise jurisdiction over him under section

52–59b(a)(1). The short answer to this contention is that the record discloses no activity on the part of Paul in Connecticut which may be construed as a transaction of business. Acts which might be considered transactions of business—the hiring of Smith and Keay and the development of a business to compete with plaintiff—took place in Florida and not Connecticut. See *Data Communication,* 514 F.Supp. at 30 (failure of plaintiff to place defendants in New York during negotiations for hiring fatal to jurisdictional claim of transaction of business). Plaintiff's reliance on Paul's phone calls from Florida to Smith and Keay in Connecticut is misplaced. These contacts with Connecticut are insufficient to support the exercise of personal jurisdiction. See *Breiner Equipment Co. v. Dynaquip, Inc.,* 539 F.Supp. 204, 206 (E.D. Mo.1982); *Bross,* 489 F.Supp. at 1371–72.

## C. *The Corporate Defendant*

■ As against Florida Bindery, the initial employer of Smith and Keay in Florida, the plaintiff invokes Conn.Gen.Stat. §§ 33–411(b) or 33–411(c)(4) to sustain jurisdiction. Section 33–411(b) provides that "[e]very foreign corporation which transacts business in this state ... shall be subject to suit in this state upon any cause of action arising out of such business." Section 33–411(c)(4) authorizes jurisdiction over a foreign corporation, whether or not that corporation is transacting or has transacted business in this State, on any cause of action arising out of tortious conduct in Connecticut.

It is not disputed that Florida Bindery has no contacts whatever with the State of Connecticut; it has no office, no property, no customers, no telephone listing, no bank account, and has never engaged in any business in Connecticut. Therefore, it is clear that plaintiff's cause of action against Florida Bindery does not fall within the statutory or constitutional parameters of either section 33–411(b) or section 33–411(c)(4) of this State's long-arm statute. See *Bross,* 489 F.Supp. at 1370–73, and

cases cited therein; *Lombard Bros.,* 190 Conn. at 250–257, 460 A.2d 481.

Accordingly, the requirements of Connecticut's long-arm statutes not being satisfied, the defendants' motion to dismiss is granted.