DATA COMMUNICATION,
INC., Plaintiff,

v.

Robert P. DIRMEYER and McFann-Grey & Associates, Inc., Defendants.

No. CV 80 2271.

United States District Court,
E. D. New York.

Jan. 29, 1981.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

In the instant motion, the plaintiff Data Communication, Inc. ("Datacom") requests a preliminary injunction enjoining the continued retention of the defendant Robert P. Dirmeyer ("Dirmeyer") by the defendant McFann-Gray & Associates, Inc. ("MGA"), allegedly in violation of the restrictive covenant in Dirmeyer's employment agreement with Datacom. The two defendants have opposed the motion and the defendant MGA has cross-moved to dismiss for lack of personal jurisdiction. For reasons set forth below, Datacom's motion is denied and MGA's motion to dismiss for want of in personam jurisdiction is granted.

## BACKGROUND

Datacom is a New York corporation engaged in the fields of technical publications and technical training which obtains the majority of its contracts through public bidding. The defendant MGA, a California corporation, is a management consulting company dealing basically in the behavioral sciences. Its work focuses mainly on the individual and the organization in an attempt to increase the competence and the productivity of employees. MGA acquires much of its work through private contracts, and like Datacom, a portion is obtained from public bids.

Since January 1, 1978, the defendant Dirmeyer has been employed by Datacom as a Vice-President in Charge of the Performance Systems Engineering Division; as such, he developed and produced training materials to complement the basic technical documentation already manufactured by Datacom. These training materials customarily involved the "formulation of lessons which, using the technical documentation and the actual equipment as principal resources, [were] designed to teach the individual on a step by step basis how to perform various tasks using the equipment." (Dirmeyer Aff. September 4, 1980 at p. 4.) On 20 July 1980, Dirmeyer voluntarily terminated his employment with Datacom, and within weeks, he was hired by MGA.

Datacom's fundamental charge is that since MGA is a competitor, Dirmeyer's employment with MGA violates the restrictive covenant in the Dirmeyer-Datacom employment agreement which provides in pertinent part that:

For a period of six (6) months after the termination by Dirmeyer of this Agreement ..., *Dirmeyer will not directly* or indirectly own, manage, operate, control or *be employed by*, participate in, or be in any manner connected with the ownership management, operation and control of *any business in competition with Datacom* or any affiliated corporation at the time of such termination. (emphasis supplied)

In addition, Datacom charges that Dirmeyer was induced to breach the restrictive covenant by MGA's tortious conduct.[1] Datacom argues that by virtue of this covenant and the facts in the instant matter, the issuance of an injunction is essential to prevent irreparable injury in that Dirmeyer is in possession of vital proprietary and confidential information which he will or has disclosed to MGA, Datacom's competitor.[2]

The defendants counter by contending that the restrictive covenant is inapplicable in that MGA operates solely in the behavioral science sphere, does not produce training programs, texts, and manuals, and is therefore not in competition with Datacom. To demonstrate this lack of competition, the defendants assert that during Dirmeyer's tenure with Datacom, Datacom submitted approximately 26 proposals and MGA 64, but in only one project of a possible 90, DABT 60–80–R–0023, did the two submit competitive bids.[3] Moreover, Dirmeyer, as a former Army officer, was retained by MGA to work solely on a project obtained on a non-competitive basis from the Department of Defense. This project, designed to compare the vocational aptitude scores of military recruits with skill qualification tests taken after the soldiers are trained, does not involve any aspect of the technical publications field and thus, defendants conclude, Dirmeyer is not acting in a capacity which could enable him to injure Datacom. Finally, both defendants argue that the unlimited scope of the restrictive covenant renders it unenforceable; but if this court should rule otherwise, the defendants contend that the preliminary injunction motion should be denied on the merits since Dirmeyer's current employment with MGA is not causing and will not cause Datacom to suffer irreparable injury.

## CONCLUSIONS OF LAW

■ Before addressing the merits of MGA's jurisdiction motion, the questions concerning the applicability of the restrictive covenant to the instant facts deserve discussion. As noted above, the defendants have maintained throughout that MGA and Datacom are not competitors and as a result Dirmeyer's employment with MGA falls outside the purview of the restrictive covenant. Although the parties do not appear to be in constant, daily competition, they nonetheless were in competition in at least one instance, the DABT 60–80–R–0023 contract. Even though MGA failed to obtain this contract, fact issues remain con-

---

1. The first two counts of the complaint, based on Dirmeyer's breach of the restrictive covenant, seek to enjoin Dirmeyer from continuing in MGA's employ and request damages for the breach; the latter two counts against MGA likewise seek both a direction preventing MGA from employing Dirmeyer and a prayer for damages, but these counts are grounded on MGA's alleged tortious interference with the business and employment relationship between Dirmeyer and Datacom.

2. In support of this argument, Datacom asserts the following:

   Prior to being employed by plaintiff, Dirmeyer had no knowledge of plaintiff's customers and more particularly the particular division and individuals within the division responsible for the handling of services rendered by plaintiff. In his capacity with plaintiff, he was responsible for the preparation of proposals to potential customers in response to bids. As part of his job, he had access to and made use of the most confidential of DATACOM's proprietary, technical, financial and customer information, including corporate know-how, names and history of relationships with customers and suppliers work in process, previous proposals to customers and job-by-job cost analysis containing job budgets. Dirmeyer was familiar with the details of plans and proposals pending and others unsubmitted to clients which represent DATACOM's future business plans. (Platt Aff. August 18, 1960, at p. 4–5.)

3. Datacom currently has three outstanding bids for work with the United States Army. They are as follows: (1) DABT 60–80–R–0023, Basic Skills Education Program for MOS 05C 10; (2) DABT 60–80–R–0029, Basic Skills Education Program for 67 Series MOS; and (3) DABT 60–80–R–0021, Training Material for CMF 76. While working for Datacom, Dirmeyer working on proposals DABT 60–80–R–0023 and DABT 60–80–R–0029 and was aware that Datacom was going to submit a bid on DABT 60–80–R–0021. (*See* Porthouse Aff. at p. 4.) Both Datacom and MGA bid on the DABT 60–80–R–0023 project, but MGA was informed by the Department of the Army on August 27, 1980 that its proposal had been rejected.

cerning the competitive nature of Datacom's and MGA's respective businesses, and whether the defendants' acts gave rise to an actionable wrong. While the circumstances as set forth might be insufficient to establish ultimate liability or might not even withstand scrutiny in a summary judgment motion, they are clearly sufficient to sustain jurisdiction as it appears that MGA and Datacom are competitors and that a tort has in fact been committed. *See Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 207, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978); *Longines-Wittnauer Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); *Evans v. Planned Parenthood*, 43 A.D.2d 996, 997, 352 N.Y.S.2d 257 (3d Dep't 1974).

Nonetheless, the action against MGA must be dismissed because Datacom has failed to meet any statutory bases under New York law for obtaining personal jurisdiction over MGA, a California corporation, not authorized to do business in New York, and not maintaining offices, employees, or agents in New York. Under New York's "long-arm" statute, N.Y.C.P.L.R. 302, Datacom asserts two bases for sustaining jurisdiction over the person of MGA: (1) that MGA transacted business with Dirmeyer within New York, N.Y.C.P.L.R. 302(a)(1); and (2) that MGA's tortious act committed outside New York caused injury to Datacom within the State and that MGA, a company deriving substantial revenue from interstate commerce, expected or should have expected the act to have consequences in New York. N.Y.C.P.L.R. 302(a)(3)(ii).

■ With regard to jurisdiction based on Section 302(a)(1) "transaction of business," Datacom asserts upon information and belief that MGA conducted "substantial negotiations" with Dirmeyer in New York prior to his employment. (Platt Aff. September 15, 1980 at p. 11.) One of MGA's interviewing officers maintains, however, that the discussions took place in California and Virginia, not New York. (Greenberg Aff. November 24, 1980). While this court might be inclined to sustain jurisdiction were Datacom able to demonstrate that the defendants discussed business in New York, *see Rosenfeld, Inc. v. Himar Sales Corp.*, 460 F.Supp. 640 (S.D.N.Y.1978); *Xedit Corp. v. Harvel Industries Corp.*, 456 F.Supp. 725 (S.D.N.Y.1978), Datacom's inability to place any of the negotiations in New York mandates a denial of jurisdiction on the basis of Section 302(a)(1).

Datacom's second jurisdiction basis is N.Y.C.P.L.R. 302(a)(3)(ii) in that MGA allegedly committed a tortious act outside New York which caused injury to Datacom in New York. Assuming that a tort was committed, there still remains the question whether a direct injury has occurred or will occur in New York.

■ To prevent Section 302(a)(3) from reaching nonresidents remotely connected with the State, New York courts have ruled that neither domicile nor residency in New York alone is sufficient to support jurisdiction. *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980); *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978); *see Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975); *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428 (2d Cir. 1971); *see also Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980); *Bross Utilities Service Corp. v. Aboubshait*, 489 F.Supp. 1366 (D.Conn.1980) (New York's Section 302(a)(3) used to analyze comparable Connecticut statute). To meet the jurisdictional predicate, the movant must demonstrate "a more direct injury within the State and a closer expectation of consequences within the State than an indirect financial loss resulting from the fact that the injured person resides or is domiciled there." *Fantis Foods, Inc. v. Standard Importing Co., Inc., supra*, 49 N.Y. at 326–27, 425 N.Y.S.2d 783, 402 N.E.2d 122. In the commercial tort sphere, the situs of the injury is usually "the place where the critical events associated with the dispute took place." *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra*, 439 F.2d at 433 quoting *Spectacular Promotions, Inc. v. Ra-*

*dio Station WING*, 272 F.Supp. 734, 737 (E.D.N.Y.1967).

Thus in cases where there has been no showing that the critical events took place in New York, New York case law compels a dismissal of the action. In *Sybron Corp. v. Wetzel, supra*, the defendant Wetzel, Sybron's former employee, was accused of divulging trade secrets to a nonresident competitor, De Dietrich Corporation, who in turn was actively soliciting Eastman Kodak Company, a Sybron customer, located in Rochester, New York. Although Wetzel had been hired by De Dietrich in Florida to supervise a New Jersey plant, the prospective loss of Eastman Kodak as a customer in New York placed the injury in New York and the court sustained jurisdiction under Section 302(a)(3). Conversely, in *Fantis Fantis Foods, Inc. v. Standard Importing Co., supra*, Synergal, Ltd., a cooperative association of Greek dairy producers which was neither doing business nor transacting business in New York, entered into two contracts in Greece to sell the same 1200 barrels of feta cheese to Americans who were in competition, Fantis Foods, Inc. and Standard Importing Company. While Standard received the first three hundred barrels, Fantis Foods received the remaining 900 and thereafter instituted suit against Standard for the diversion of the first 300 barrels. Standard then entered a third party claim against Synergal for conversion and Synergal's motion to dismiss for lack of personal jurisdiction was granted. Even though Synergal was the sole or dominant exporter of Greek feta cheese, the *Fantis Foods* court ruled that the conversion occurred in either Greece or the high seas and did not cause direct, actionable injury to Standard in New York because damages for conversion are the value of the property at the time and place of the conversion, not lost profits or consequential loss to the company.

Datacom nonetheless maintains that, as in *Sybron Corp. v. Wetzel, supra*, MGA's tortious conduct is causing or will cause direct injury in New York. Datacom insists that the DABT 60–80–R–0023 contract demonstrates that Datacom and MGA di-

rectly compete for contracts with the Federal Government and according to Datacom, "[t]he loss of a contract with the Federal Government is a loss of a New York customer because the Federal Government exists in every state, including New York." (Plaintiff's Third Memo of Law at p. 6.) Moreover, argues Datacom, the loss of other prospective New York corporate customers, the loss of Dirmeyer's unique talents, and the prospective loss of Datacom's New York employees places the injury in New York.

■ This court is not persuaded that the Federal Government exists in every state for the purposes of fixing the situs of an injury. Were the court to conclude that the Federal Government, when acting through its agencies, existed in every state, the results, at least in the jurisdiction sphere, would be patently absurd and possibly unconstitutional. For example, if Datacom negotiated and contracted in Texas with an office of the Department of the Army located at Fort Sam Houston, Texas, to perform work in Texas, and MGA or a non-New York counterpart tortiously induced the Army's Texas office to breach the contract, Datacom's reasoning would lead to the conclusion that there would be injury in New York because the Army, like the Federal Government, is omnipresent on a nationwide scale. The injury in this hypothetical case obviously occurred only in Texas, and any other result would not only frustrate the New York legislative's intent in preventing the "long arm" statute from reaching parties remotely connected with the jurisdiction, *Fantis Foods, Inc. v. Standard Importing Co., supra*, but would also be subject to challenge on constitutional grounds. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In conclusion, therefore, Datacom's alleged loss of the Federal Government as a customer does not place the injury in New York absent a showing that Datacom has lost or will lose business with a Federal agency or department located in New York. *See Sybron*

*Corp. v. Wetzel, supra; see also G.S.C. Assoc., Inc. v. Rogers*, 430 F.Supp. 148 (E.D.N.Y.1977).

■ Datacom's further arguments with respect to the loss of prospective New York corporate customers and the loss of employees are likewise without merit. This court cannot sustain jurisdiction by blindly accepting these unsupported, speculative assertions. Thus, Datacom's failure to demonstrate any likelihood of such losses mandates the rejection of these arguments and a denial of jurisdiction on these grounds.

■ Finally, the fact that "the functioning of Datacom's New York operations has been harmed by the loss of Dirmeyer who no longer will assist the operation and functioning of Datacom in New York" (Plaintiff's Third Memo. of Law at p. 6) will also not place the injury in New York since this injury is clearly derivative, not direct. *Fantis Foods, Inc. v. Standard Importing Co., supra; Sybron Corp. v. Wetzel, supra.* Initially, Datacom did not complain of the loss of Dirmeyer's "unique talent" when Dirmeyer resigned; to the contrary, Sidney Platt, Datacom's Vice President, in a letter dated June 20, 1980 apparently accepted Dirmeyer's resignation while holding him to the restrictive covenant. Had Dirmeyer not worked for the requisite six months or worked for an entity Datacom did not consider a competitor, there would have been no direct, compensatory injury to Datacom as a result of the loss of Dirmeyer's talents. Now that Datacom alleges a breach of the restrictive covenant and a tortious interference with that covenant, this does not automatically convert unrecoverable damage into a loss worthy of redress. The damages resulting from MGA's alleged tortious inducement of Dirmeyer to breach the restrictive covenant just do not flow from the loss to Datacom of Dirmeyer's services, and consequently cannot form the basis for jurisdiction under Section 302(a)(3).

There is an additional "foreseeability" restriction under subsection ii of Section 302(a)(3) which must also be met to sustain jurisdiction. This court, however, is unable to rule on this point in view of the failure

to place any injury within New York. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra*, 439 F.2d at 434; *Stark Carpet Corp. v. M-Geough Robinson, Inc.*, 481 F.Supp. 499, 509 (S.D.N.Y. 1980).

The last issue for discussion is Datacom's request for a preliminary injunction enjoining Dirmeyer individually from further employment with MGA. In order to be granted a preliminary injunction under Rule 65(a) of the Fed.R.Civ.P., the moving party must demonstrate (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *United States v. Bedford Assoc.*, 618 F.2d 904, 912 n. 15 (2d Cir. 1980); *Jackson Dairy, Inc. v. H. P. & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Without initially addressing the irreparable harm issue, the plaintiff's failure to meet either of the latter two prongs mandates a denial of this portion of the motion.

■ With regard to the "likelihood of success" test, this court recognizes that an employer has a legitimate interest "in safeguarding that which has made [its] business successful and to protect [itself] against deliberate surreptitious commercial privacy," *Reed, Roberts Assoc., Inc. v. Strauman*, 40 N.Y.2d 303, 308, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976), but a preliminary injunction will only be granted after the movant demonstrates that the restrictive covenant is both enforceable and necessary to protect the employer's interest. For several reasons set forth below, Datacom has failed to make such a demonstration.

■ First, there is a question whether the restrictive covenant is even applicable insofar as Datacom and MGA are at best marginal competitors. During Dirmeyer's tenure with Datacom, Datacom, a publisher of technical manuals, and MGA, a company engaged in behavioral science research, submitted competitive bids in only one instance

while submitting as a whole approximately 90 bids for different types of work. Without considering the obvious operational differences between Datacom and MGA, parties who compete for only one contract in a year and one-half span hardly appear to be competitors in the traditional sense. Even though there is a question regarding their competitive nature sufficient to sustain jurisdiction, it is not sufficient to show a "likelihood of success" on the merits.

Second, the restrictive covenant is of doubtful enforceability since it completely restrains competition. While restraint of competition may be necessary in limited instances, total restraint would force every employee subject to such a covenant to leave the business field of his previous employer even where the employer's business was not endangered by a worker's employment with a competitor. Balancing the "powerful consideration of public policy which militate against sanctioning the loss of a man's livelihood," *Purchasing Assoc. v. Weitz,* 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963) against Datacom's need to protect its interests, the restrictive covenant on its face appears too broad and ostensibly unenforceable because "its broad-sweeping language is unrestrained by any limitations keyed to uniqueness, trade secrets, confidentiality or even competitive unfairness." *Columbia Ribbon & Carbon Mfg. v. A–1–A Corp.,* 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (1977).

Third, enforcement of the restrictive covenant presupposes that Dirmeyer possesses trade secrets and confidential information, the absence of which in this case this court finds particularly compelling. The majority of Datacom's work is obtained through public bidding and it is well settled that trade secret protection does not attach to "customers' names ... readily ascertainable from sources outside its business ...." *Columbia Ribbon & Carbon Mfg. v. A–1–A Corp., supra,* 42 N.Y.2d at 499, 398 N.Y.S.2d 1004, 369 N.E.2d 4, *citing Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 392, 328 N.Y.S.2d 423, 278 N.E.2d 636 (1972). In addition to customer lists, Datacom asserts that Dirmeyer is in possession of "financial infor-

mation, information regarding bids and proposals, the names of individuals within large organizations and production methods" (Plaintiff's Memo. of Law at p. 10). There has been no showing, however, that any of these items falls under the trade secret umbrella. Rather, it appears that Datacom is "more concerned about [Dirmeyer's] knowledge of the intricacies of [Datacom's] business operation," *Reed, Roberts Assoc., Inc. v. Strauman, supra,* 40 N.Y.2d at 308, 386 N.Y.S.2d 677, 353 N.E.2d 590, and this knowledge of Datacom inner workings alone does not qualify as a trade secret. *See Ferranti Electric, Inc. v. Harwood,* 43 Misc.2d 533, 251 N.Y.S.2d 612 (Sup.Ct.Nassau Co.1964). Finally, despite Dirmeyer's value to Datacom for his work with the United States Military or anyone else, there has been no showing that his talents are so unique and extraordinary to warrant protection equal to the protection afforded trade secrets. *Columbia Ribbon & Carbon Mfg. v. A–1–A Corp., supra,* 42 N.Y.2d at 499, 398 N.Y.S.2d 1004, 369 N.E.2d 4, *quoting Purchasing Assoc. v. Weitz, supra,* 13 N.Y.2d at 272, 274, 246 N.Y.S.2d 600, 196 N.E.2d 245. Datacom's failure to demonstrate any "likelihood of success" in this action mandates a denial of the motion on the basis of the first prong.

To obtain preliminary injunctive relief under the second prong, the movant must demonstrate that the suit involves significant questions and that the balance of hardships tips in its favor. In determining whether there are "sufficiently serious questions going to the merits," *United States v. Bedford Assoc.,* 618 F.2d at 912, n. 5, this court must ascertain whether the issues raised herein are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir. 1953), *quoted in, Unicon Management Corp. v. Koppers Co.,* 366 F.2d 199, 205 (2d Cir. 1966). *See* Mulligan *Forward: Preliminary Injunction in the Second Circuit,* 43 Brooklyn L.Rev. 831 (1977).

Not only has Datacom failed to show that the balance of hardship tips in its favor, more significantly, it has failed to demonstrate to this court that there are serious, substantial, difficult and doubtful issues involved in this action. As noted above, the problems herein involve merely the applicability of a restrict covenant in an employment agreement to protect trade secrets and other confidential information. If the plaintiff had established both the enforceability and the need for the broad restrictive covenant to protect existing trade secrets and confidential information, the result might have been different. However, as previously explained, plaintiff has failed to make any such showing.

In conclusion, even if the plaintiff had met either of the two prongs of the merits test, the plaintiff's motion for injunctive relief would nonetheless have to be denied since he has failed to show that a denial of such relief would cause irreparable injury. The potential injury to Datacom is best described as remote and speculative rather than actual and imminent. *Jack Kahn Music v. Baldwin Piano & Organ*, 604 F.2d 755, 759 (2d Cir. 1979). In cases such as this where the potential injury is merely a slight possibility, any motion for a preliminary injunction must be denied.

Motion for the preliminary injunction is denied and the motion to dismiss for lack of personal jurisdiction over the defendant MGA is granted.

So Ordered.