GRANADA TELEVISION,
INTERNATIONAL, LTD.,
et al., Plaintiffs,

v.

LORINDY PICTURES INTERNATION-
AL, INC., et al., Defendants.

No. 82 Civ. 4786 (MJL).

United States District Court,
S.D. New York.

Oct. 24, 1984.

As Amended Dec. 6, 1984.

Cowan, Liebowitz & Latman, P.C., New York City by Roger L. Zissu, Mary A. Donovan, New York City, for plaintiffs.

Paul Weiss Rifkind Wharton & Garrison, P.C., New York City by Stuart Robinowitz, Andrew J. Peck, Mark S. Olinsky, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This is a copyright action involving Sir Arthur Conan Doyle's famed Sherlock Holmes stories. Plaintiff seeks a declaration that certain of the stories are in the public domain. It also seeks damages for what it contends was tortious assertion of a nonexistent copyright. Defendants move pursuant to Fed.R.Civ.P. 12(b) for dismissal of this action on the grounds that there is no jurisdiction over the persons of the defendants. At oral argument the Court made several rulings on the motion. For the reasons stated below, the Court denies the motion to the extent that it seeks dismissal of the second cause of action as to defendants Seymour Weintraub ("Weintraub") and Lorindy Pictures International, Inc. ("Lorindy").

## FACTS

Plaintiff Granada Television Limited ("Granada U.K.") is a British company engaged in the production of films for television. Plaintiff Granada Television International Ltd. ("Granada N.Y."), a New York corporation, and a subsidiary of Granada U.K., is in the business of importing, distributing and exhibiting Granada U.K.'s films throughout the United States.

The primary defendant is Dame Jean Conan Doyle who is the sole surviving child of Sir Arthur and, by way of several transfers, holds (or soon will hold) all copyrights, to the extent they exist, to all of the Sherlock Holmes works. The other defendants are Mr. Seymour Weintraub and Lorindy Pictures.

Lorindy is a Florida corporation engaged in the business of producing television programs. Mr. Weintraub is a California resident, the majority shareholder of Lorindy and is its president.[1]

In May 1981, Michael Cox of Granada U.K. wrote Dame Jean inquiring as to the copyright claims to the Sherlock Holmes stories in various countries. He indicated his plans to produce "an authoritative series of dramatizations of the Sherlock Holmes stories". Dame Jean responded that she was pleased to hear of his plans; that the stories were in the public domain in the United Kingdom and that she owned the U.S. copyright on the earlier stories and would acquire rights to the later works year by year. In September 1981, Dame Jean wrote Mr. Cox again on her own initiative, advising him that she was negotiating with United States companies for use of her copyrights and reiterated that she was pleased with Cox's plans. Mr. Cox apparently interpreted Dame Jean's letters as an offer for Granada U.K. to negotiate rights to the later copyrighted works and not as an indication that she was claiming rights to the earlier works of her father. As stated in Mr. Cox's letter of September 28, 1981 to Dame Jean:

---

1. Apparently Lorindy, no longer technically has the licensing rights to the Holmes stories, having assigned them to Holmes Pictures in June of 1982. Holmes Pictures is also controlled by Weintraub and has an interlocking directorship with Lorindy.

Our own plans are proceeding slowly and, because we want to deal with the adventures chronologically, we are concentrating on the *earlier stories which are, of course, in the public domain both here and the States.* (Emphasis added.) (Exhibit *G*.) Zissu Aff. dated September 7, 1982, at 5.

In Dame Jean's responding letter, she noted: "I take your point about the earlier stories being unprotected in the USA as well as over here." Zissu Aff. at 5.

Granada believed that the copyrights on a large number of the Sherlock Holmes stories had expired and thus those stories were in the public domain. Granada seeks a declaratory judgment that these stories are in fact in the public domain.[2]

In June of 1981, Lorindy began to negotiate with Dame Jean's United States agent for the copyrights to the Holmes works. Lorindy also wanted to produce a series of Sherlock Holmes television shows. After somewhat complex negotiations an agreement was reached, and on December 30, 1981 Dame Jean signed it.

The next significant event occurred about March 19, 1982 when Mr. Nimmer, Lorindy's California attorney, wrote a letter to Granada U.K. indicating that Lorindy had acquired exclusive licensing rights from Dame Jean and that Lorindy would consider any United States distribution of Granada's Holmes series a violation of both United States copyright and trademark laws. Because of this letter, Granada N.Y.'s ability to distribute the Granada U.K. series in the United States was placed in serious question.

Plaintiffs claim that the Lorindy letter constitutes a tortious act. Plaintiffs argue that it is a business tort to knowingly claim a copyright which does not exist. Defendants argue that no such tort exists. However, solely for the purposes of this juris-

dictional motion defendants have agreed to assume that such a tort does exist under applicable law.

Defendants moved to dismiss on the grounds that the Court lacks *in personam* jurisdiction over any of the defendants. The Court permitted discovery on the jurisdictional dispute. The Court then held oral argument on the motion. At the argument the Court ruled from the bench that jurisdiction did exist over Dame Jean. The Court held that she was doing business in New York through her agent so that jurisdiction existed under New York Civil Practice Law and Rule ("CPLR") § 301 (McKinney). The Court also ruled that Mr. Weintraub and Lorindy are not doing business in New York within the meaning of CPLR § 301.[3] Therefore, the only jurisdictional question left for resolution is whether CPLR § 302 provides for *in personam* jurisdiction over Weintraub and Lorindy in the tort action.

## DISCUSSION

■ This action is brought under the Court's diversity jurisdiction. In diversity cases the *in personam* jurisdiction of the District Court is coextensive with that of the court of general jurisdiction in the state in which the federal court sits. We are, therefore, governed by New York's jurisdictional statutes, *viz.* CPLR § 302. That statute states in pertinent part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

\* \* \* \* \* \*

2. commits a tortious act within the state . . . ; or

---

2. The defendants present a somewhat complicated and novel defense which is not relevant to this jurisdictional motion.

3. This holding, however, has little practical effect on the claim for a declaratory judgment

since, if this Court finds that Dame Jean has no copyright to the disputed material, then Lorindy, as Dame Jean's licensee, cannot have any copyright either.

3. commits a tortious act without the state causing injury to person or property within the state, ... if he

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or ....

New York CPLR § 302 (McKinney's).

It seems clear[4] that the tort was not committed in New York, so jurisdiction, if it is to be found, must be grounded in section 302(a)(3). The first step in analyzing section 302(a)(3) is to determine whether the act caused injury to person or property within New York State.

In cases of physical injury, the interpretation of section 302 is easy. However, "[t]he troubling question in the instance of a commercial tort is whether New York is the locus of the injury—whether the impact of the tort occurred within the state." *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 311 (S.D.N.Y.1983).

■ It is well settled that plaintiffs' residence or domicile within a state is not sufficient to ground jurisdiction under section 302(a). *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980). Moreover, no jurisdiction exists when the only alleged injury is loss of income within the state where plaintiffs' business is located. *American Eutectic Welding Alloy Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428 (2d Cir.1971); *Arbitron Co. v. E.W. Scripps Inc.*, 559 F.Supp. 400 (S.D.N.Y. 1983). "In other words, Section 302(a)(3) CPLR looks to imparting of the original injury within the State of New York and not resultant damage, in order that juris-

diction might be effectuated." *Black v. Oberle Rentals, Inc.*, 55 Misc.2d 398, 400, 285 N.Y.S.2d 226, 229 (1967).

The court in *American Eutectic* cited Chief Judge Weinstein's analysis in *Spectacular Promotions, Inc. v. Radio Station WING*, 272 F.Supp. 734 (E.D.N.Y.1967) approvingly. Judge Weinstein wrote:

> In determining the situs of an injury * * * there are three possibilities worth considering: (1) any place where plaintiff does business; (2) the principal place of business of the plaintiff; and (3) the place where plaintiff lost business. For purposes of a jurisdictional statute such as New York's, the first can be rejected almost out of hand; the second has slight merit, and the third seems most apt. Where the plaintiff is a large national corporation, permitting it to sue in any of the fifty states in which it does business would obviously be unfair to the defendant. The main place of business of the plaintiff would have no predictable relationship with the tortious activities of the defendant. The place where the plaintiff lost business would normally be a forum reasonably foreseeable by a tortfeasor and it would usually be the place where the critical events associated with the dispute took place.

272 F.Supp. at 737.

Judge Weinstein's analysis seems well supported by the later New York Court of Appeals case of *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978).

In *American Eutectic* the Second Circuit held that on the facts plaintiffs only suffered derivative commercial injury in New York which is insufficient to establish jurisdiction under section 302. Lorindy and Weintraub argue that the injury alleged by Granada is as derivative as the damages claimed in *American Eutectic*. However, that case is distinguishable. In *American Eutectic*, the plaintiffs' customers were not

---

**4.** There is no dispute that the threatening letter was written in and mailed from California, and it was received by Granada U.K. in England.

72

in New York (439 F.2d at 432). In the case at bar, Granada clearly alleges that it lost or will lose customers in New York State.

 Under Judge Weinstein's analysis in *Spectacular Promotions*, the situs of the injury is in the state in which the customers were lost. Since New York is the largest television market in the United States, plaintiffs allege direct injury in New York State. But for defendants' alleged action, plaintiffs contend Granada N.Y. would be able to sell the Holmes series to New York television stations. The fact that plaintiffs may also suffer injury in other states, as well as New York, is irrelevant. It is enough they allege the loss of customers in New York. We hold that plaintiffs have satisfied the first part of section 302(a)(3).

The next step in the section 302(a)(3) analysis is to determine if one of the four disjunctive elements of section 302(a)(3)(i) or (ii) is met. Those four elements are: (1) regularly does or solicits business in the state or (2) engages in any other persistent course of conduct in the state; or (3) derives substantial revenue from goods used or consumed or services rendered in the state; or (4) expects or should reasonably expect the act (i.e., tort) to have consequences in the state and derives substantial revenue from interstate or international commerce. If any one of these elements is met, there is *in personam* jurisdiction in New York.

JURISDICTION OVER DEFENDANT WEINTRAUB

 There is abundant evidence on the record regarding Mr. Weintraub's activities in New York State. While it is true that the Court found that these activities did not constitute "doing business" in New York,

these activities do meet the requirements of the second element—"engages in any other persistent course of conduct ... in the state." CPLR § 302(a)(3)(i).

While there is little case law interpreting the "course of conduct" language, Weintraub's actions seem to fall within the plain language of the statute.[5] This requirement was intended to meet constitutional limitations on *in personam* jurisdiction. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) ("there [must] be come act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In Weintraub's case, there is no question that his actions meet the "course of conduct" requirement. For example, in the eighteen months prior to service of process, Weintraub was present in New York on 124 different days. Zissu Aff. after Discovery, at ¶¶ 6–14. He is a general partner in at least two New York real estate partnerships and owns land in New York. Zissu Aff. ¶¶ 15–22. Weintraub has a bank account at Chemical Bank in New York. Zissu Aff. ¶ 23. The record contains other examples of Weintraub's persistent course of conduct in New York. For various reasons, this Court found that these actions did not constitute doing business under CPLR § 301. However, we hold that they do meet the requirements of CPLR § 302(a)(3)(i) as well as the minimum con-

5. The Court takes note of the Practice Commentaries by Joseph McLaughlin. He wrote:

If an injury occurs in New York through the commission of a tortious act outside the state, the tortfeasor may be subject to jurisdiction if he engaged in "any other persistent course of conduct." Again, it is not required that the cause of action arise out of the conduct, so long as it arises from the tortious act. The language was probably inserted to round out the preceding provision for doing and soliciting business in New York, so that *any re-*

*peated conduct in New York which does not constitute "business" would suffice.* The obvious difference between the two provisions is that the persistent course of conduct may involve a great range of human activity which, while it might fall beyond the pale of "business" conduct, would, because of its consistency, serve as a solid link of jurisdiction to New York.
J. McLaughlin, *Practice Commentary, CPLR § 302,* at New York CPLR foll. § 302. McKinney's 1972. (Emphasis added.)

tacts standard of the Constitution.[6] Accordingly, we find jurisdiction over defendant Weintraub as to the tort action.

## JURISDICTION OVER DEFENDANT LORINDY

■ The Court finds jurisdiction over Lorindy under CPLR § 302(a)(3)(ii). Defendants do not challenge, and from the record it appears to be true, that Lorindy derives substantial revenue from interstate or international commerce. Accordingly, there is jurisdiction over Lorindy if it is expected or reasonably should have expected its act (tort) to have consequences in New York.

The purpose of the letter to Granada U.K. was to invoke the United States copyright in the United States. In other words, the letter was intended to stop the sale of the Holmes series in the United States. As noted before, New York is the largest television market in the United States. Clearly, if it was Lorindy's intent to stop the distribution of the series in New York then *a fortiori* they should have foreseen the consequences in New York.

The Court finds that there is jurisdiction over Lorindy and Weintraub for the tort cause of action. Accordingly, the motion to dismiss is granted as to defendants Lorindy and Weintraub on the copyright action and is otherwise denied.

It is So Ordered.

---

**6.** "It is clear ... that the legislature did not intend to extend the jurisdiction of the New York courts to the outer reaches of constitution-al power." *American Eutectic,* 439 F.2d at 435 [Footnote Omitted].